UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Minnesota Specialty Crops, Inc.,

Plaintiff,

vs. ORDER

Minnesota Wild Hockey Club, L.P., and NHL Enterprises, L.P.,

Defendants, Civ. No. 00-2317 (JRT/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 26th day of September, 2001.

* * *

On August 13, 2001, the Court heard argument on the Defendants' Motion to Compel Discovery, Motion to Compel a Rule 30(b)(6) Deposition, and Motion to Quash, as well as the Plaintiff's Motion to Compel, and for a Protective Order. At the time of the Hearing, the Plaintiff appeared by Peter M. Lancaster, Esq., and the Defendants appeared by Frederick W. Morris and Lorin L. Reisner, Esqs. For reasons which follow, we deny the Defendants' Motion to Compel, and their Motion to Quash, without prejudice to their renewal. We grant the Defendants' Motion for a Rule 30(b)(6) deposition and, obversely, we deny the Plaintiff's Motion for a Protective Order. Further, we grant the Plaintiff's Motion to Compel.

SEP 26 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(47)

## II. Factual and Procedural Background

This is a trademark infringement action, which was filed by the Plaintiff Minneapolis Specialty Crops, Inc. ("MSC"), against the Minnesota Wild Hockey Team ("the Team"), and NHL Enterprises, L.P. ("NHLE"), concerning the use of the "MINNESOTA WILD" design mark. MSC is a corporation, which is based in McGregor, Minnesota, and which has been using the "MINNESOTA WILD" design mark since 1990, in identifying jellies, food products, clothing, wine, and other goods, that it manufactures and distributes to local grocery, and liquor retail outlets.

After the Team chose the design mark "MINNESOTA WILD" as its official logo, MSC filed this trademark infringement action. As noted by the Defendants, MSC's lawsuit does not seek to prevent the Team from employing the phrase "MINNESOTA WILD" to identify itself. See, Complaint, at ¶1. Rather, MSC claims that the Team's use of the MINNESOTA WILD design mark, so as to market and sell various products, including food, clothing, and beverages, is causing, and will continue to cause, a likelihood of confusion between the two entities, and their products.

## III. Discussion

The Defendants have brought a Motion to Compel Discovery, a Motion to Compel a Rule 30(b)(6) Deposition, and a Motion to Quash "Improper" Requests for Admission. In turn, MSC has brought a

Motion to Compel, and a Motion for a Protective Order. We will address each of these issues separately.

A. The Defendants' Motion to Compel Discovery Responses.

The Defendants' Motion to Compel discovery involves nine Interrogatories, and twenty-seven Requests for Production of Documents. However, the Defendants have not specifically detailed each discovery request at issue, or MSC's response, and how the response is inadequate. Rather, they have merely submitted an eighteen page, single-spaced letter, which was directed to opposing counsel, and which does little to assist the Court in ferreting the disputes between the parties. Consequently, as the Defendants have argued their Motion, both in their moving papers, and at the Hearing, in a more generic, global fashion, we will largely confine our discussion to those generic, global issues, as they have been framed by the Defendants.

At the Hearing, the Defendants informed us that the crux of this Motion to Compel discovery responses is the information generally requested in Interrogatory Number 2. Interrogatory Number 2 states as follows:

> Identify by generic product descriptor each product sold or marketed by you under or in connection with The MINNESOTA WILD Trademark, and for each product: (a) state the inclusive period during which the product was sold or offered for sale; (b) identify the person in

> your organization with primary responsibility for marketing the product; (c) state the total number of units and dollar volume of the product sold each year since introduced and year-to-date for the current year; (d) list the states in which the product is being or has been sold; (e) describe in detail the channels of trade in which the product is being or has been sold, including the identity of all distributors and retailers used to sell the product; and (f) identify the targeted retail customers and prospective purchasers.

Exhibit 1, at 2, attached to Affidavit of Frederick W. Morris. According to the Defendants, they need this information in order to evaluate MSC's presence in the marketplace. In particular, the Defendants contend that the information is relevant to the issue of the likelihood of confusion. They argue that Courts generally look at six factors in evaluating likelihood of confusion, including the strength of the trademark, the degree to which the products travel through the same channels of trade, and evidence of actual confusion. See, Duluth News-Tribune v. Mesabi Publishing Co., 84 F.3d 1093, 1096 (8th Cir. 1996). Thus, they believe that they are entitled to the requested information.

In response to this Interrogatory, MSC provided the Defendants with general information about its sales, including that its products are sold through about 600 stores, in twenty-five States, but also that it has sold products in all fifty States. Moreover, as it revealed at the Hearing -- ostensibly for the first time -- MSC

represents that it is only alleging trademark rights in Minnesota, and not in the remainder of the nation.

The Defendants also seek information pertaining to the damages that MSC will claim, as they believe that they can show that MSC has not been damaged, or that MSC's damages have been substantially limited. The Defendants further ask for MSC's financial information in order to show that MSC's claim for Defendants' profit is limited to the geographic area in which MSC can prove that it has achieved market penetration, or has concrete plans to expand. See, Minnesota Pet-Breeders v. Schell & Kampeter, 843 F. Supp. 506, 513-14 (D. Minn. 1993).

MSC does not argue that the requested information is not relevant but, rather, that it has turned over all of the information it has in regard to the requests. According to MSC, it has provided all of the financial information it possesses, albeit not in the format preferred by the Defendants. More importantly, however, MSC stated at the Hearing that it will not be claiming anything more than nominal damages based on lost profits. Rather, its damages will be based mainly on the Defendants' profits from such activities like advertising and licensing. Thus, it contends that its financial information it not important to such a damage analysis.

As it became apparent at the Hearing, the parties have not conducted a responsible "meet and confer" on the issues addressed

by the Defendants' Motion to Compel discovery. First, it appears that the Defendants have not been totally aware of MSC's position on several issues, which has required them to seek more information than they would normally have any interest in obtaining. Moreover, the Defendants are asking for information which MSC claims it has produced, or cannot produce in the format that the Defendants would like. This Court cannot force MSC to perform its accounting function in a novel way merely to advance the Defendants' litigation interests. However, the Defendants should have access to MSC's financial information, in order to access the damage claim being made by MSC. In doing so, the Defendants should not be forced to wade through a morass of financial information without any guidance from MSC as to what the information means. Therefore, we direct the parties to "meet and confer" regarding the outstanding disputes contained in the Defendants' Motion to Compel. If they are still unable to resolve all of their disputes, then they should contact the Court immediately.[1] Thus, we deny the Defendants' Motion to

---

[1]Although the issue was not specifically raised at the Hearing, the Defendants did request, in their Motion to Compel, that MSC provide a privilege log in this case, as MSC has apparently withheld several documents on the basis of privilege, but has not produced such a log. As the Defendants correctly note, Rule 26(b)(5) contemplates such a log. The Rule provides as follows:

> When a party withholds information otherwise discoverable under these rules by claiming

(continued...)

Compel, but without prejudice to its renewal should the parties need further guidance from the Court.

---

[1](...continued)

> that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Rule 26(b)(5), Federal Rules of Civil Procedure.

While MSC agrees that Rule 26(b)(5) contemplates a privilege log, it contends that the parties agreed to produce a privilege log only for documents, which were generated before January 22, 1998, and which relate to "MINNESOTA WILD." However, on the evidence presented, it appears to this Court that the agreement only pertained to the Defendants. In particular, in a letter from counsel for MSC, to counsel for the Defendants, MSC's counsel stated:

> This follows up on your comments in your June 12 letter about a privilege log. We have no interest in forcing the team to list every piece of privileged correspondence that it possesses. As to relevant matters, however, we think we are entitled to such a list. I would propose that you provide a list for documents generated on or before January 22, 1998, that relate to (1) name issues, (2) MSC, or (3) contracts with the NHL or affiliate organizations.

Exhibit A, at 3, to Declaration of Robert L. Jacobson.

In response, counsel for the Team produced such documents. Id. at 4. We find no other mention of a reciprocal agreement for MSC, however. Thus, if MSC has not yet complied with its duty under Rule 26(b)(5), it should immediately do so, or demonstrate the propriety of a reciprocal duty to identify the existence of privileged communications.

B. The Defendants' Motion to Compel a Rule 30(b)(6) Deposition, and the Plaintiff's Motion for a Protective Order.

The Defendants have noticed a Rule 30(b)(6) deposition of MSC. According to the Defendants, the reason for the deposition is that MSC's responses to Defendants' discovery requests were not adequate, and the Defendants need to inquire into such issues as the strength of MSC's trademark, the likelihood of confusion, and the damages MSC has suffered. The individual who would be deposed for these purposes is Jay Erckenbrack ("Erckenbrack"), who is the President of MSC, and who has already been deposed once, as an ordinary witness, in this case. He was also deposed, as a Rule 30(b)(6) deponent, by the Team, in connection with a Patent and Trademark Office Trademark Trial and Appeal Board Hearing. According to MSC, this is the third deposition of Erckenbrack, and attending such a deposition would place an undue strain on MSC, as it is a small company, and Erckenbrack is the sole owner. MSC also complains that the scope of the deposition is too vague to comport with the requirements of Rule 30(b)(6).

First, as to the burden placed on Erckenbrack by this third deposition, we do not find that the deposition would be overly burdensome. The Defendants have offered to lessen the inconvenience to Erckenbrack by deposing him in McGregor, Minnesota, rather than Minneapolis. Moreover, while it is true that Erckenbrack was

deposed once previously, as a Rule 30(b)(6) deponent, in regard to the Patent and Trademark Office proceeding, the Defendants note that that proceeding involved a narrower range of issues. As a consequence, Erckenbrack was not examined on the question of damages or reverse confusion. The only other deposition of Erckenbrack was in his capacity as an individual witness. As a Rule 30(b)(6) deponent, rather than as an individual witness, Erckenbrack will have to prepare for the deposition, and will respond to questions as the corporation, and not as an individual. Thus, we will allow the Rule 30(b)(6) deposition to proceed.

MSC further contends, however, that the scope of the Rule 30(b)(6) deposition notice is too vague to comport with the requirements of that Rule. In particular, MSC points to such topics, listed in the deposition notice, as the following:

> 1. Plaintiff's competitors in the areas of food, clothing, beverages, merchandise and all other areas in which plaintiff claims to sell or intends to sell goods or services;
>
> 2. Plaintiff's use of the mark "MINNESOTA WILD";
>
> 10. Plaintiff's expenditure for advertising, marketing, and promotional activities, including expenditures relating either directly or indirectly to the sale or licensing of goods or services bearing the MINNESOTA WILD trademark or any variation thereof, including the dates on which the advertising or marketing activity took place, the content of the marketing or advertising, and the location of the

> marketing or advertising, e.g., McGregor, Minneapolis, Duluth, and so forth[.]

See, Exhibit 10 to Declaration of Frederick W. Morris.

The Plaintiff points to these assertedly broad categories as exemplifying the unreasonable breadth of the intended questioning.

As to the scope of the deposition, we do agree with MSC that some of the deposition areas are quite broad. However, as with the Defendants' Motion to Compel, we believe that the topics may be narrowed by a responsible "meet and confer" of the parties. In particular, once the parties determine what further information MSC has to produce, and where that information can be found, they should discuss what other information they need to glean from a Rule 30(b)(6) deponent. Thus, although we grant the Defendants' Motion to Compel the Rule 30(b)(6) deposition, we direct the parties to "meet and confer" regarding the scope of the deposition, in light of any further disclosures by MSC. Obversely, we deny MSC's Motion for a Protective Order.

C. The Defendants' Motion to Quash 130 Requests for Admission, and "Related Interrogatory."

Within the time frame for discovery, MSC served on the Defendants 130 Requests for Admission, and a "related interrogatory." MSC has agreed to withdraw the related interrogatory. With respect to the Requests for Admission, the Defendants contend that they are inappropriate, because they circumvent the limits imposed

by our Pretrial Order on the number of Interrogatories, and are just a vehicle for fact discovery, due to their argumentative posture. Thus, the Defendants seek an Order declaring that they do not have to answer any of the Requests.

We do not find that a wholesale Order directing the Defendants either to answer all of the Requests, or none of them, is appropriate, as we do believe that a number of the requests are proper. Once again, however, the parties have failed to conduct a "meet and confer" in an attempt to whittle down the number of disputed requests -- instead, they have resorted to the immediate intervention of the Court. Thus, we direct the parties to "meet and confer" so as to determine, in the first instance, which Requests are acceptable. If disputes remain after the parties conduct a responsible "meet and confer," then they should immediately seek our guidance. Thus, we deny the Defendants' Motion to Quash, but without prejudice to its renewal

D. The Plaintiff's Motion to Compel.

There appear to be two issues which remain in MSC's Motion to Compel: 1) MSC's request that the Defendants provide NHLE officials for a Rule 30(b)(6) deposition,[2] and 2) that the Defen-

---

[2]MSC's Motion to Compel included a number of other disputes which were apparently resolved by the parties. Those disputes include MSC's ability to depose a number of the Defendants' (continued...)

dants identify the dates of their first use of "MINNESOTA WILD" in connection with relevant goods. First, in regard to the request for first use dates, the Defendants contend that they have agreed to provide this information. However, at the Hearing, MSC asserted that the form in which the Defendants provided the information is unacceptable, as they simply provided MSC with a large amount of information, and stated that the "first use" dates were located somewhere in that information. We direct the Defendants to provide the requested information in the simplest form they can devise. We will not require them, however, to compile the information if it would be just as easy for MSC to do so. However, we do not have enough information, at this time, to determine who can most easily compile the pertinent information. Rather, we instruct the parties

[2](...continued) witnesses -- including Robert Naegele, Jr., Scott Tyra, Mary Sotis, Richard Pepin, James Voegeli, Eric Paulsrud, Mark Bergen, Myron Helfgott, and John Bunge -- after the July 31, 2001 discovery deadline, as it was unable to complete the depositions in a timely fashion; and a request by MSC that the Defendants provide their total relevant revenues and marketing expenditures information. In regard to the depositions taking place after the discovery deadline, we have no qualms about this procedure if the depositions were noticed, or the parties were subpoenaed, a reasonable time prior to the end of the discovery period. Otherwise, we express no opinion on the consequences of the parties' agreement to depose the above individuals, after the discovery cutoff, if there was no deposition notices or subpoenas a reasonable time before the discovery cut-off date, and if their agreement falls apart. Thus, as the parties contend that there is no dispute before the Court, we deny the Plaintiff's Motion to Compel on these issues, as moot.

to end the wasteful maneuvering, and comply with their discovery obligations. The Defendants should either provide a concise listing of the "first use" dates, or they should assist MSC in attempting to obtain that information from the discovery provided.

Next, as to the Rule 30(b)(6) deposition, according to MSC, it served a Rule 30(b)(6) deposition notice on NHLE officials on April 30, 2001.[3] It appears that the deposition was originally scheduled

---

[3]MSC also stated, at the Hearing, that it would like to take another Rule 30(b)(6) deposition of the Team, as it did not have all of the financial information necessary at the time of the original deposition. In particular, it appears that MSC served a contention Interrogatory, in January of 2001, concerning whether the Defendants were claiming that their revenues should be reduced by their expenditures. The Defendants did not answer this Interrogatory, however, as they claimed that it was premature. It was not until just recently that MSC received information regarding this Interrogatory, including the Defendants' marketing expenditures. Nonetheless, MSC went forward with the Rule 30(b)(6) deposition of the Team, and now claims that the witness was unable to answer a number of questions, and that it was hampered because it did not have the relevant discovery responses before it. In contrast, the Defendants contend that they advised MSC that the representative at the Rule 30(b)(6) deposition of the Team would be able to answer all revenue and expenditure questions, and that MSC did not ask questions about those particular areas.

Since it appears that the Defendants failed to provide relevant discovery to MSC prior to the Rule 30(b)(6) deposition, and that the discovery was important to the questioning of the Team's witness, we will allow the deposition to proceed, but on a limited basis. MSC will strictly limit its questioning to the discovery which was belatedly provided by the Defendants -- but restricted to seven hours, at most. See, Rule 30(d)(2), Federal Rules of Civil Procedure ("Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours.").

to occur on May 16, 2001, although the parties mutually agreed to reschedule it, as the scope of Rule 30(b)(6) depositions was an issue before the Court by way of a previous Motion by MSC. Although the Defendants contend that MSC has not been diligent in attempting to reschedule the deposition, MSC notes that there were still some outstanding issues, regarding depositions before the Court, which prompted MSC to wait on the deposition. Thus, we find that the deposition was timely noted, and, contrary to the Defendants' assertion, that the Plaintiff has not waived the right to take the deposition by failing to diligently attempt to reschedule it. Therefore, we grant MSC's Motion to Compel on this issue, and allow it to go forward with the Rule 30(b)(6) deposition of the NHLE.

We add a postscript. As our discussion highlights, many of the issues have needlessly burdened the Court with considerations which, by design, the Federal Rules of Civil Procedure relegate to the parties in the first instance. We do not favorably view the parties' apparent disdain for their "meet and confer" obligations. At the time of the Hearing, we made our disappointment plain, that we were at a loss to understand how seasoned litigation counsel could invoke the time of the Court before they attempted to resolve their disagreements on a professional basis. We will not be so indulgent again. We remain mystified that, at this late date, the

contentions of the opposite side were unknown, in several critical respects, until they argued their cross-Motions to Compel before us. A principled "meet and confer" would have avoided that result without drawing upon the Court's scarce resources.

NOW, THEREFORE, It is --

ORDERED:

1. That the Defendants' Motion to Compel Discovery [Docket No. 26] is DENIED, but without prejudice to its renewal after the parties conduct a responsible "meet and confer."

2. That the Defendants' Motion to Compel a Rule 30(b)(6) Deposition [Docket No. 26] is GRANTED, in part, as more fully outlined in the text of this Order.

3. That the Defendant's Motion to Quash [Docket No. 26] is DENIED, but without prejudice to its renewal after the parties conduct a responsible "meet and confer."

4. That the Plaintiff's Motion to Compel [Docket No. 27] is GRANTED, as detailed in the text of this Order.

5. That the Plaintiff's Motion for a Protective Order [Docket No. 27] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE