UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Minnesota Specialty Crops, Inc.,

Plaintiff,

vs. ORDER

Minnesota Wild Hockey Club, L.P., and NHL Enterprises, L.P.,

Defendants, Civ. No. 00-2317 (JRT/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 9th day of August, 2002.

I. Introduction

On April 11, 2002, the Court heard argument on the Plaintiff's Motion to Compel Discovery. At the time of the Hearing, the Plaintiff appeared by Peter M. Lancaster, Esq., and the Defendants appeared by Frederick W. Morris, and Timothy P. Griffin, Esqs. For reasons which follow, we grant the Plaintiff's Motion.

II. Factual and Procedural Background

This is one of a series of Discovery Motions that have been brought by one or the other of the parties to this action. On December 13, 2001, we heard argument on the Plaintiff's Motion for an Order which would compel the Defendants to produce certain privileged documents, following the Defendants' waiver of its previ-

124

FILED AUG 09 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

ously asserted attorney/client and work product privileges, when they adopted an "advice-of-counsel" defense to the Plaintiff's trademark infringement claims. Previously, the Defendants had not produced any documents, which had been generated after February 12, 1998 -- which was a date that fell a few weeks after the Defendants received the Plaintiff's "cease and desist" letter -- claiming that, after that date, all their otherwise discoverable documents were protected by the work product doctrine, as they had been prepared in anticipation of litigation.

In an Order dated December 21, 2001, we agreed with the Plaintiff that, "by raising the advice-of-counsel defense, the Defendants ha[d] waived their privilege as to all documents upon which that defense is based, and which were not prepared in anticipation of litigation," and we concluded that the Defendants' use of an assumed date for the assertion of the work product privilege, without reference to the subject matter of the document for which privilege had been asserted, was inappropriate. Accordingly, we granted the Plaintiff's Motion, and instructed the Defendants that, "irrespective of when a document was prepared, [they] should produce any documents, or relevant parts thereof, that [were] related to their advice-of-counsel defense," except those that were "not related to such a defense, and [were] legally privileged." Order of December 21, 2001, at 10.

Now the Plaintiff returns, and complains that the Defendants have not complied with our Order, as the Defendants only produced a single, additional document, in response to that Order's directive. The Plaintiff contends that the Defendants have continued to unfairly engage in a "selective invocation of privilege and work product protection to use and publicize the attorney communications that they believe benefit them while they continue to hide those that do not." Plaintiff's Memorandum in Support of Motion to Compel ("Plaintiff's Brief"), at 1. The Plaintiff asks that we direct the Defendants to produce: "All documents discussing [the Plaintiff's] trademark rights in "MINNESOTA WILD" or related design or how such rights might be affected by defendants' actions or contemplated actions." Plaintiff's April 12, 2002 Letter Brief to the Court.

In response, the Defendants contend that, after receiving our Order of December 21, they "reviewed their file and identified a small number of documents prepared after February 12, 1998 concerning advice of counsel relating to the Hockey Club's use of 'Minnesota Wild.'" Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Compel ("Defendants' Brief"), at 6. However, the Defendants contend that with "one exception," those documents "were obviously and expressly prepared in anticipation of litigation," and thus were not produced. Id. The Defendants assert that the

scope of discovery, which has been identified by the Plaintiff, is "overbroad and unworkable," and that the only documents which remain in issue are those "relating to advice of counsel provided to defendants concerning the adoption and use of 'Minnesota Wild' by the Hockey Club or NHLE that have not been produced on a claim of privilege." Defendants' April 16, 2002 Letter Brief. The Defendants suggested, as a solution to the parties' disagreement, that the subject, undisclosed documents be submitted to the Court for an in camera review.

At the time of the Hearing we expressed our belief that, perhaps, the dispute between the parties could only be resolved by an in camera review of the disputed documents. However, given the Plaintiff's concern, that the Defendants had not properly defined the scope of the documents which were to be submitted for that review, we permitted the parties to submit supplemental briefing on this issue. See, In re Papst Licensing GmbH Patent Litigation, 2001 WL 797315 (E.D. La., July, 2001), citing Glenmede Trust Co. v. Thompson, 56 F.3d. 476, 486 (3rd Cir. 1995). In addition, we asked the Defendants to include, with the documents that they were producing for in camera review, a privilege log, which would describe the submitted documents,[1] and a roster of the key players, in order

[1]Earlier, the parties had agreed that the Defendants would not (continued...)

that we would be informed as to the identities of the authors, and recipients of the documents. Upon receipt of those submissions, we took the Plaintiff's Motion under consideration.

## III. Discussion

The inquiry before the Court is dual-faceted. First, we are obliged to define the world of documents that are discoverable, in view of the Defendants' assertion of an advice-of-counsel defense, and its attendant waiver of privilege. Necessarily, this requires our determination of whether the Defendants had gathered all of the relevant documents, based upon a proper appreciation of the scope of the privileges being waived, to be submitted for our review. If the Defendants' identification of relevant documents were overly narrow, then our review would be correlatingly ineffectual. Second, we are obliged to determine whether the documents produced by the Defendants, for our in camera review, are properly discoverable.

(...continued)
be required to create a privilege log of documents generated after January 22, 1998, as any such log would have to contain virtually all of the documents that the Defendants had prepared in anticipation of litigation. See, September 26, 2001 Order, p. 6-7, n. 1. However, since the Defendants would be producing, for the Court's review, documents which post-dated January 22, 1998, a supplementation to their prior privilege log was needed, in order to afford the Plaintiff a basis, upon which to challenge any privilege asserted as to those documents, if a challenge were appropriate.

A. Standard of Review. Generally, discovery may inquire into all information, not otherwise privileged, that is relevant to the subject matter of the action, provided that it is reasonably calculated to lead to the discovery of admissible evidence. See, Rule 26(b) Federal Rules of Civil Procedure. However, a privilege which would otherwise protect certain materials from discovery can be voluntarily waived, such as "when a party asserts an advice of counsel defense, [and] waives the attorney-client privilege with respect to 'all communications to and from counsel concerning the transaction for which counsel's advice was sought.'" Green, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C., 202 F.R.D 418, 420 (E.D. Penn. 2001), quoting Applied Telmatics v. Sprint Corp, 1995 WL 567436 *1 (E.D. Penn., Sept. 21, 1995).

The assertion of an advice-of-counsel defense, can also serve as a waiver of attorney work product immunity. See, Mushroom Assoc. v. Monterey Mushrooms, Inc., 1992 WL 442892 *3 (N.D. Cal., May 19, 1992). However, "[b]ecause the attorney client privilege and the work product doctrine have different standards of waiver, they must be considered separately," and the scope of the waiver of these protections may not be identical. SNK Corp. of America v. Atlus Dream Ent. Co. Ltd., 188 F.R.D. 566, 570 (N.D. Cal. 1999). As a result, when framing Orders which compel the disclosure of privileged documents, Courts should do so "on a case by case basis

consistent with the principles of fundamental fairness." Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C, supra at 420.

As to the attorney-client privilege, the general rule is that the assertion of an advice-of-counsel defense waives that privilege "as to communications and documents relating to the advice." SNK Corp. of America v. Atlus Dream Ent. Co. Ltd., supra at 570, citing Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 929 (N.D. Cal. 1976). "Fairness dictates that a party may not use the attorney-client privilege as both a sword and a shield," and therefore, parties asserting the advice-of-counsel defense "may not selectively disclose privileged communications that it considers helpful while claiming privilege on damaging communications relating to the same subject." Id. As a result, the inquiry into the scope of an attorney-client privilege waiver, arising from the assertion of an advice-of-counsel defense, should be guided by concerns for fairness, and by "the subject matter of the documents disclosed, balanced by the need to protect the frankness of the client disclosure and to preclude unfair partial disclosure." Id., citing Starsight Telecast, Inc. v. Gemstar Development Corp., 158 F.R.D. 650, 655 (N.D. Cal. 1994). Given the nature of the defense being asserted, "the scope [of the waiver] must of necessity be somewhat broad and is, in fact, a 'subject matter' waiver -- i.e.,

a waiver of all communications on the same subject matter." Micron Separations, Inc. v. Pall Corp., 159 F.R.D. 361, 363 (D. Mass. 1995).

Since the work product doctrine is based, however, on different considerations than is the attorney-client privilege, the waiver of its protections may be more limited in scope. The work product doctrine is meant "to protect the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery." Handgards, Inc. v. Johnson & Johnson, supra at 929. Thus, an inquiry into a waiver of work product protection requires a balancing of "the need for discovery with the right of an attorney to retain the benefits of his own research." Id. at 932. Nevertheless, at its heart, the fundamental inquiry as to the scope of the work product waiver is, again, a matter of fairness, and we must consider the waiver in the context of an asserted advice-of-counsel defense, in a trademark infringement case under the Lanham Act. See, Title 15 U.S.C. Section 1051 et seq.

To establish its claims for trademark infringement under the Lanham Act, Title 15 U.S.C. §1125(a), the plaintiff must prove that: (1) it owns a distinctive trademark that is entitled to protection; and (2) the defendant's use of a similar mark is likely to confuse consumers about the source of defendant's product. Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th

Cir. 1999). In determining "whether there is a likelihood of confusion, we must consider six factors, none of which alone is dispositive: (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree of competition between the products; (4) the alleged infringer's intent to "pass off" its goods as the trademark owner's; (5) incidents of actual confusion; and (6) the type of product, its cost, and conditions of purchase." Luigino's Inc. v. Stouffer Corp., 170 F.3d 827, 830 (8th Cir. 1999), citing Co-Rect Prods., Inc. v. Marvy! Adver. Photography, Inc., 780 F.2d 1324, 1330 (8th Cir. 1985), citing, in turn, SquirtCo. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980).

Advice-of-counsel evidence impacts upon the alleged infringer's intent which, in some Circuits, is characterized as the "good faith" factor. "'Good faith' looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and good will and any confusion between his and the senior user's product." Lang v. Retirement Living Publishing Co., Inc., 949 F.2d 576, 583 (2nd Cir. 1991), quoting Edison Brothers Stores, Inc. v. Cosmair, Inc., 651 F. Supp. 1547, 1560 (S.D.N.Y. 1987). "Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advice of counsel." The

Sports Authority, Inc. v. Prime Hospitality Corp., 89 F.3d 955, 964 (2nd Cir. 1996), quoting W.W.W. Pharmaceutical Co. v. Gillette Co., 984 F.2d 567, 575 (2nd Cir. 1993).

The issue of "good faith" can also impact upon the propriety of an award of attorney's fees. "The Lanham Act permits a prevailing party to recover attorneys fees 'in exceptional cases.'" Take-Care Corp. v. TAKECARE of Oklahoma, Inc., 889 f.2d 955, 955 (10th Cir. 1989), citing Title 15 U.S.C. §1117(a). "Running through the case law, which has developed around a §1117(a) award of attorneys fees, is the implicit recognition that some degree of bad faith fuels the infringement at issue." Id. at 957. "[U]nder certain circumstances, a party's reasonable reliance on the advice of counsel may defuse otherwise willful conduct." Id. "[I]f a client seeks counsel's advice in a timely manner, makes adequate disclosure to counsel, receives counsel's opinion and then acts upon it, surely the Chancellor must pause before branding the client as a wilful [sic], deliberate, fraudulent commercial thief." Cuisinarts, Inc. v. Robot-Coupe Int'l Corp., 580 F. Supp. 634, 638 (S.D.N.Y. 1984).

"When a party intends to rely at trial on the advice of counsel as a defense to a claim of bad faith, that advice becomes a factual issue, and 'opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what

conduct it advised.'" Trouble v. The West Seal, Inc., 179 F. Supp.2d 291, 304 (S.D.N.Y. 2001), quoting Vicinanzo v. Brunschwig & Fils, Inc., 739 F. Supp. 891, 894 (S.D.N.Y. 1990). "A party who intends to rely at trial on the advice of counsel must make a full disclosure during discovery; 'failure to do so constitutes a waiver of the advice-of-counsel defense.'" Id., quoting Vicinanzo v. Brunschwig & Fils, Inc., supra at 894; see also, Coleco Indus., Inc. v. Universal City Studios, Inc., 110 F.R.D. 688, 689-91 (S.D.N.Y. 1986)(holding that defendant who raises an advice of counsel defense, in a suit alleged trademark infringement, has placed the documents, which contain the legal theories, opinions, and conclusions, of counsel in issue, thereby waiving the work product privilege).

As the Court reasoned, in Coleco, by disclosing certain documents related to the advice-of-counsel, the defendant was engaging in a selective waiver of his work product privilege, so as to establish the reasonableness of the defendant's reliance upon that advice. Coleco Indus., Inc. v. Universal City Studios, Inc., supra at 690. As the Court went on to explain:

> This selective disclosure of work product to establish the basis for an opinion of counsel constitutes an implied waiver of all work product relevant to the same issue. While the work product privilege is accorded to protect the adversary system by affording an attorney a private realm in which to develop his legal

> strategies, that privilege impedes a fair adversarial presentation of the facts when it is invoked to avoid disclosure of anything other than a necessarily biased presentation of the relevant facts.

Id.

Viewed somewhat differently -- namely as the disclosure of expert opinion evidence -- the same waiver of privilege applies. As expressed by the Court, in Hager v. Bluefield Regional Medical Center, Inc., 170 F.R.D. 70, 78 (D.D.C. 1997), citing 4 J. Moore, Federal Practice, 26.64[4], at 26-447:

> In the context of expert witnesses, the near absolute protection given by the courts to opinion work product must give way when a litigant puts his attorney's opinions into direct issue by designating his attorney as an expert witness. Under Fed.R.Civ.P. 16(b)(4)(A), a party is entitled to discover the identity of experts, the facts and opinions on which the experts are expected to testify, and the grounds for those opinions. Moreover, "when the activities of counsel are inquired into because they are at issue in the action before the court, there is cause for production of documents that deal with such activities, though they are work product."

In the vernacular, the work product privilege is intended to shield the strategic considerations of a party's attorney from exploration by the opposing party, but the privilege should not be wielded as a sword to advance the holder's interest, while depriving the opponent of the bases upon which the strategic considerations are premised. See, e.g., United States v. Workman, 138 F.3d 1261,

1263-64 (8th Cir. 1998)("The attorney client privilege cannot be used as both a shield and a sword, and [the defendant] cannot claim in his defense that he relied on [the advice of counsel] without permitting the [plaintiff] to explore the substance of that advice.").

As we observed in Cordis Corp. v. SciMed Life Systems Inc., 980 F. Supp. 1030, ---- (D. Minn. 1997) -- albeit in addressing the reasonable reliance inquiry in the context of a willful patent infringement claim -- "[g]iven the emphasis on 'competency' as revealed by 'objective' evidence [in the analysis of whether or not reliance on an opinion was reasonable], we believe that a rigorous examination of the factual predications for an opinion of patent counsel, in defense of a claim of willfulness is essential," but we could "see no prospect for the development of evidence, which would be relevant to the willfulness inquiry, by allowing the Plaintiff to peruse the legal research, and preliminary drafts of the opinion letters, that were ultimately transmitted to [the defendant] unless those drafts were reviewed, and/or edited by the employees or agents of the Defendant."

B. Legal Analysis. Here, the dispute between the parties does not center upon the fact that the Defendants' advice of counsel defense worked some waiver of their attorney-client and work produce privileges, but rather, the disagreement rests on the scope

or extent of that waiver.[2] The Plaintiff contends that the Defendant should be required to produce "[a]ll documents discussing [the Plaintiff's] trademark rights in 'MINNESOTA WILD' or related design or how such rights might be affected by [D]efendant's actions or contemplated actions." Plaintiff's Letter Brief of April 12, 2002. The Defendants oppose that contention as "overbroad and unworkable," and they claim that they have fully produced all of the documents which their defense requires. Defendants' April 16, 2002 Letter Brief to the Court.

According to the Defendants, prior to January 22, 1998, they received an opinion from counsel that their adoption, and use, of the name "Minnesota Wild" would be "entirely lawful." The Defendant maintains that it is this opinion which forms the basis of their advice-of-counsel defense and, since they "do not intend to rely on any subsequent advice to establish their good faith," they have fully complied with the Plaintiff's production requests, as

---

[2]The Plaintiff expresses outrage as to the Defendants' claim of privilege, notwithstanding their waiver of privilege by virtue of the advice-of-counsel defense. We are not persuaded that there is any responsible basis for the outrage voiced. The Plaintiffs have deposed all of the attorneys who have been involved in advising the Defendants as to their employment of the mark in contest, even though certain of those attorneys have disclaimed any expertise in trademark law. We seriously doubt that a more intensive discovery effort could have been designed by the Plaintiff, other than to seek the disclosure of privileged information which has not been the subject of any waiver.

they are not "withholding any documents on which they intend to rely."

However, the proper scope of the waiver is not restricted to those documents, upon which the Defendants intend to rely, but rather, it extends to the defense they wish to mount on advice-of-counsel grounds. See, Rule 26(b)(1), Federal Rules of Civil Procedure. By way of example, if, in addition to the legal opinion of January 22, 1998, which advised that no infringement was at hand, the Defendants received a second opinion, from the same, or different legal counsel, which advised of their view that the Defendants were guilty of infringement. No one could seriously contend that the original opinion, alone, was discoverable, but not the subsequent one. As "the reasonableness of a party's reliance on the advice of counsel must be addressed," in determining whether the Defendants acted in good faith, the circumstances surrounding the Defendants' election to rely on the first opinion, as opposed to the second, would be plainly relevant.

Here, the potential for infringement is not static, or set in place by the original use that the Defendants contemplated for the mark at issue. Instead, the Plaintiff complains that the Defendants' use of the mark has expanded to a broader spectrum of goods, and has more closely impinged upon goods that have borne the Plaintiffs' mark. As a result, the reasonableness of the Defen-

dants' reliance on their attorneys' opinions involves a continuing or evolving course of commercial marketing. To the extent that the Defendants have received -- aside from advice concerning the litigation strategy -- counsel on the legality of their use of the mark at issue on a larger sweep of goods, than originally being marketed on January 22, 1998, that counsel is discoverable. See, Chiron Corporation v. Genentech Inc., 179 F. Supp.2d 1182, 1188 (E.D.Cal. 2001)(Holding that any advice received about reliance on an opinion letter, even advice received during the Trial itself, was discoverable in an action alleging on-going patent infringement.).

Therefore, we find that the proper scope of discovery, as to the Defendants' asserted advice-of-counsel defense, continues to be, as we stated in our Order of December 21, 2001, "any documents, or relevant parts thereof, that are related to the advice-of-counsel defense," with the understanding that "related to the advice-of-counsel defense" means related to the substance of that defense, and not merely the specific opinion letter upon which the Defendants are said to have relied. "As a result [of asserting an advice-of-counsel defense], a party must produce not only other communications and opinions of the same attorney, but also privileged information from other counsel involving the same subject." Beneficial Franchise Co. v. Bank One, 205 F.R.D. 212 (N.D. Ill.

2001). Thus, the Defendants must produce all communications, which do not concern litigation strategy, but which are "involved in setting forth a communication expressly indicating an opinion or conclusion on the" issue of whether the Defendants could legally use the MINNESOTA WILD Mark, given the Plaintiff's use of that mark.

Turning, then, to the documents that the Defendants have produced for our in camera review, it appears that the Defendants have anticipated the scope of the waiver that we have delineated. If we error in this observation, then we direct the Defendants to recommit to a review of their records so as to produce all of their documents which relate to their continuing resort to counsel as to the noninfringement of their marketing programs. Of course, in such a directive, we do not so much as intimate that the Defendants have not produced, for our independent review, all of the documents which fall within the scope of discovery we have limned.

As to the documents submitted by the Defendants, having reviewed them, we find that Bates Priv. No. 0001-0005, 0014-0056, 0072-0082, and 0086-97, are protected by the attorney-client and attorney work product privileges, and they need not be produced. In addition, Bates Priv. No. 0006-0013, 0057-0071, and 0083-0085, are protected work product, and need not be produced. These docu-

ments plainly address litigation, settlement, or administrative strategies and, thus, are not discoverable.

Bates Priv. Nos. 0098 and 0099 are internal electronic messages transmitted between counsel, and others within the NHL enterprise. These documents need not be disclosed as they fall outside of the scope of the waiver at issue, since they do not pertain any opinion concerning the propriety of marketing products which bear a mark that the Plaintiff here challenges.

The remaining documents, Bates Priv. Nos. 0100-0124, are comprised of a series of printouts of electronic messages, and one handwritten document, concerning the Defendants' use of the mark in various marketing campaigns. In these documents, a finalized advertisement was transmitted to Eric Palsrud, who is a Partner with the law firm of Leonard, Street, and Deinard, in order to obtain his approval prior to the advertisement's use. Even though these documents post-date the commencement of this litigation, we find that advice of counsel, concerning the potential for an infringement claim by the Plaintiff, was addressed. These documents, in our considered view, fall within the waiver of privilege that the Defendants have effected by the adoption of their advice-of-counsel defense. See, Micron Separations, Inc. v. Pall Corp., supra at 363 (holding that advice-of-counsel defense acts as "a waiver of all communications on the same subject matter.").

As to any work product privilege that, apart from the waiver, may had attended these documents, we also conclude that any such privilege has been waived. The work product doctrine is meant "to protect the effectiveness of a lawyer's trial preparations by immunizing such materials from discovery." Handgards, Inc. v. Johnson & Johnson, supra at 929. These specific documents do not reflect the Defendants' Trial strategy, but express counsel's legal opinions as to the propriety of employing various advertisements, given the Plaintiff's trademark claims. But for the Defendants' adoption of an advice-of-counsel defense, they would have been entitled to shield these advices from the Plaintiff's scrutiny but, having advanced such a defense, they may not insulate from the Plaintiff's view the precise type of legal opinion upon which they claim reliance. For the same reason, those parts of Bates Priv. Nos. 0100 - 0101, which concern the use of the mark at issue, are also discoverable.

Lastly, in order to preserve the status quo, the Defendants need not disclose the documents that we have identified as being subject to production, until they have exhausted any appeal they wish to take from this Order. Accordingly, if no appeal is to be taken, by any of the parties, then the noted documents should be produced by no later than the exhaustion of the appeal period pertinent to this Order.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiff's Motion to Compel [Docket No. 110] is GRANTED.

BY THE COURT:

Raymond L. Erickson

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE